# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

R. WESLEY LUCAS,      :
                               :
    **Plaintiff,**           :
                               :    **Civil Action**
                               :    **No. 5:10-cv-460**
STATE FARM FIRE AND CASUALTY :
COMPANY,               :
                               :
    **Defendant.**        :
_____:

## ORDER ON STATE FARM'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff R. Wesley Lucas brings this action against his insurance carrier,

Defendant State Farm, for failure to pay a fire loss claim under Plaintiff's homeowner's

insurance policy.   State Farm has filed the current Motion for Summary Judgment.

Having considered the Motion, all responses and replies thereto, and the applicable law,

the Court finds that because Plaintiff failed to submit to a required examination under

oath, he breached the insurance contract, and State Farm is entitled to judgment as a

matter of law.   Thus, for the reasons explained herein, Defendant's Motion for

Summary Judgment [Doc. 13] is hereby **GRANTED**.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## BACKGROUND

In the early morning hours of October 22, 2008, while Plaintiff was spending the night away at his mother's house, Plaintiff's house caught fire, and his home and personal property were damaged. Plaintiff had a homeowner's insurance policy with State Farm which covered fire loss (the "Policy"). In November, Plaintiff notified State Farm he had retained legal counsel to represent him with his fire loss claim. A claim specialist on behalf of State Farm initiated an investigation of the facts and circumstances surrounding the fire. On December 1, 2008, State Farm sent the first of at least seventeen letters to Plaintiff or his attorney, over an almost two year period of time, outlining Plaintiff's duties under the Policy and requesting Plaintiff comply with those

duties.

State Farm explained to Plaintiff in that first letter that certain terms and conditions of the Policy mandate that Plaintiff produce documents and records in support of his claim and submit to an examination under oath.   Specifically, the Policy provides as follows:

2.    **Your Duties After Loss.**   After a loss to which this insurance may apply, you shall see that the following duties are performed:

. . .

c.    prepare an inventory of damaged or stolen personal property.   Show in detail the quantity, description, age, replacement cost and amount of loss.   Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d.    as often as we reasonably require

. . .

(2)    provide us with records and documents we request and permit us to make copies;

(3)    submit to and subscribe, while not in the presence of any other insured:

. . .

(b) examinations under oath; and

. . .

4

e.      submit to us, within 60 days after the loss, your signed sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1)     the time and cause of loss;

(2)     interest of the insured and all others in the property involved and all encumbrances on the property;

(3)     other insurance which may cover the loss;

(4)     changes in title or occupancy of the property during the term of this policy;

(5)     specifications of any damaged building and detailed estimates for repair of the damage;

(6)     an inventory of damaged or stolen personal property described in 2.c;

(7)     receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8)     evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

(Policy p. 13, Doc. 13, Exh. A).

On December 26, 2008, Plaintiff submitted proof of loss documents to State Farm.

Although disputed by State Farm, Plaintiff maintains that he provided State Farm with

the proper information available to him.[1] (Pl. Aff., para. 15, Doc. 19, Exh. A). Plaintiff admits, however, that when he "submitted the proof of loss [he] did not use [State Farm's] form.   [He] just listed everything on a piece of paper."   Id.   Although Plaintiff maintains he provided the requested information, on December 29, 2008, State Farm rejected Plaintiff's proof of loss. State Farm informed Plaintiff his proof of loss was incomplete and requested that Plaintiff provide a signed, sworn proof of loss, personal property inventory, and documents supporting each.   State Farm also explained that upon receipt of the proof of loss, State Farm would seek Plaintiff's examination under oath.

Plaintiff maintains that he provided the information when State Farm requested it. Id. at para. 13. However, State Farm sent three follow up letters on February 4, February 26, and April 1, 2009, to the attorney representing Plaintiff at that time, reiterating its need for the specific documents and notifying Plaintiff's attorney it would demand Plaintiff's examination under oath and the production of certain documents (such as financial documents). (Doc. 24, #4-6, Exhs. B-1, B-2, & B-3).

On April 8, 2009, some five months after the fire loss, State Farm scheduled Plaintiff's examination under oath for April 21, 2009, and instructed Plaintiff to bring the

_____

[1] The record does not contain copies of the documents Plaintiff submitted to State Farm.

requested documents and sworn proof of loss to the examination. Id., #7, Exh. B-4. Although Plaintiff had given State Farm a recorded statement, State Farm clearly stated that it "requires not only [Plaintiff's] proof of loss and inventory, but also his statement under oath and the other documents listed below in order to make a decision on his claim." Id.  Moreover, State Farm clearly informed Plaintiff that "because there are questions regarding this fire loss and in order that the amount of the loss might be ascertained by State Farm, [Plaintiff] should also bring with him at the time of his statement under oath the following records and documents," listing specific documents and records regarding Plaintiff's finances and income. Id. State Farm stated its understanding that some of the documents could have been destroyed in the fire, and suggested alternative ways to obtain the information.   Id.

Due to a conflict with Plaintiff's attorney's schedule, however, the examination was rescheduled for May 14, 2009. (Doc. 24, #8, Exh. B-5). However, two days before the examination was to take place, on May 12, 2009, Plaintiff's counsel withdrew his representation, and the examination was postponed. (Doc. 24, #9, Exh. B-6).   On May 27, 2009, Plaintiff secured new counsel.   On June 10, 2009, State Farm corresponded with Plaintiff's new attorney and reiterated the need for the requested documents and Plaintiff's examination under oath in order to make a determination on Plaintiff's claim. Id. State Farm clearly stated that it understood from Plaintiff's counsel's "call to State

Farm that [Plaintiff] may only be inclined, at this point, to give an unsworn, unrecorded interview.   However, State Farm must respectfully insist upon full compliance with the policy." Id.

Between June and September of 2009, State Farm sent four follow up letters to Plaintiff's counsel reiterating the need for Plaintiff to provide the requested documents and submit to an examination under oath. (Doc. 24, #10-13, Exhs. B-7, B-8, B-9, & B-10). In September 2009, Plaintiff's second attorney withdrew from his representation of Plaintiff.   On September 8, 2009, Plaintiff contacted his local State Farm agent asking what he needed to do in order to resolve his claim. (Doc. 24, #13, Exh. B-10). Plaintiff made similar inquiries when he spoke with his local agent again on October 8, 2009. (Doc. 24, #14, Exh. B-11).

On October 8, 2009, almost a year after the fire loss, State Farm sent Plaintiff a letter reiterating the Policy requirements Plaintiff needed to satisfy in order for State Farm to be able to make a decision on the claim. Id.   In no uncertain terms, State Farm informed Plaintiff he must provide the specified documents and submit to an examination under oath.   State Farm notified Plaintiff that it had rescheduled Plaintiff's examination under oath for October 23, 2009, at 11:00 a.m.   Id.   State Farm sent this letter to Plaintiff's address and Plaintiff's mother's address.

Plaintiff failed to appear for the examination and now maintains that he did not

receive the October 8, 2009 letter from State Farm and therefore did not receive notice of the examination. However, five hours after the examination was scheduled to begin, at 4:11 p.m., Plaintiff called State Farm "and told [State Farm's] receptionist that [he was] aware of a meeting scheduled on [his] claim but that [he] would not be attending as [he] needed to find an attorney.   [He] indicated that the address information [State Farm] had for [him] was incorrect.   [He] refused to provide a new address." (Letter from State Farm dated October 29, 2009, Doc. 24, #15, Exh. B-12).   Plaintiff states he does not remember making this telephone call on October 23, 2009.   State Farm sent a follow up letter to Plaintiff on October 29, 2009, and notified Plaintiff that his failure to comply with State Farm's requests might constitute a material breach of the Policy. Id.   However, State Farm offered Plaintiff the opportunity to cure the breach if Plaintiff immediately and fully cooperated with State Farm's requests.   Id.

Plaintiff did not respond or contact State Farm for six months, until May 27, 2010, and then again on June 10, 2010, when Plaintiff contacted his local agent to inquire about the status of his claim. (Letter from State Farm dated June 10, 2010, Doc. 24, #17, Exh. B-14).   On June 10, 2010, over a year and a half after the fire loss, State Farm sent Plaintiff its fourteenth letter reiterating his obligation to provide the specific documents and submit to an examination under oath. Id.

Plaintiff did not contact State Farm until some three months later, in September

9

2010, when he called and requested that State Farm mail documents to various addresses. (Doc-24, #19, Exh. B-16).   On September 20, 2010, State Farm mailed blank proof of loss and inventory forms to Plaintiff and copies of previous letters detailing the specific documents State Farm had been requesting. Id. Moreover, State Farm informed Plaintiff that he must comply with the Policy's suit limitation provision, which provides that the insured must comply with all conditions of the Policy before bringing suit, and the suit must be brought within two years following the date of loss.   Id.   Specifically, the Policy provides:

> 6. **Suit Against Us.**   No action shall be brought unless there has been compliance with the policy provisions.   The action must be started within one year after the date of loss or damage.[2]

(Policy, p. 14, Doc. 13, Exh. A). State Farm informed Plaintiff that the deadline for filing suit, October 22, 2010, was fast approaching. (Doc-24, #19, Exh. B-16).

Three days before the suit limitation period expired, on October 19, 2010, Plaintiff hand delivered certain documents to his local agent. (Doc. 24, #20, Exh. B-17). Plaintiff maintains that he provided State Farm with all of the requested documents that existed or were not destroyed in the fire, including copies of his bank statements, tax returns,

---

[2] The Policy provides that an action must be started within one year after the date of loss or damage. However, in 2006, the Insurance Commissioner in Georgia extended the suit limitation period for fire losses to two years.

and documents relating to his home mortgage and truck loan.   Plaintiff admits that he

"did not put the information on the forms that [State Farm] required.   [He] just wrote it

out on regular paper."  (Pl. Aff., para. 13, Doc. 20, #1, Exh. A). However, Plaintiff

maintains that he "got State Farm everything they asked for.   Every time I gave them

what they wanted, they asked for additional things.   Some of what they asked for I did

not have because they did not exist."   Id.

The next day, on October 20, 2010, Plaintiff contacted State Farm and attempted to

reschedule his examination under oath before the suit limitation period was set to expire

two days later. (Doc. 24, #20, Exh. B-17).   State Farm advised Plaintiff it was unable to

accommodate his request on such short notice, and even if State Farm had been able to

accommodate his request, "there was not sufficient time left for the transcript to be

prepared, for [Plaintiff] to sign it and for State Farm to make a decision of [his] claim

before October 22."   Id.   In its final letter to Plaintiff dated October 20, 2010, State Farm

said it would consider scheduling the examination after October 22, 2010, but it would

reserve all rights under the Policy, including the right to contend that it has no obligation

to Plaintiff because the time expired under the Policy. Id.

On October 22, 2010, Plaintiff filed suit in the Superior Court of Houston County

contending State Farm failed to pay his fire loss claim.   State Farm removed the case to

this Court pursuant to the Court's diversity jurisdiction and now contends Plaintiff's

case should be dismissed based on Plaintiff's failure to comply with the Policy conditions before filing suit.

Plaintiff maintains that he is mentally disabled.   Plaintiff, his mother, and his father have submitted affidavits stating that Plaintiff has been diagnosed with schizo-affective disorder and that he is bi-polar, manic depressive, and paranoid.   They attest that as long as Plaintiff takes his medication, he is able to understand and cope with life, but when he is not on this medication, he is not able to cope with stress or perform everyday activities.   Plaintiff states he was hospitalized in August of 2010 due to a recurrence of his mental illnesses, and he attached copies of medical records from that hospital visit to his affidavit.   Plaintiff also attached copies of other medical records from 2006, two years prior to the fire loss, and from 2011, after Plaintiff filed this lawsuit. Despite the fact Plaintiff's counsel fails to articulate the relevance and importance of the evidence relating to Plaintiff's mental disabilities, the Court, like State Farm, will assume counsel offers this evidence to explain Plaintiff's noncompliance with State Farm's requests.[3]

---

[3] The Court notes Plaintiff made several other irrelevant arguments concerning the fact Plaintiff lived out of his car in Atlanta approximately one year after the fire, and the suspension of Plaintiff's additional living expenses.   This Court elects not address these issues because they have no bearing on or relevance to whether Plaintiff complied with the conditions of the Policy before filing suit.

## ANALYSIS

State Farm contends Plaintiff failed to comply with Policy conditions prior to filing suit both by failing to produce the material documents State Farm requested and by failing to submit to an examination under oath.   Plaintiff responds that whether he complied with the terms of the Policy is a question for the jury.   As explained below, the Court finds that although factual disputes exist as to whether Plaintiff complied in providing the requested documents and records, State Farm is entitled to summary judgment due to Plaintiff's failure to submit to the examination under oath.

Here, the Policy clearly required Plaintiff to provide records and documents requested by State Farm and to submit to an examination under oath. (See Policy, p. 13, Doc. 13, Exh. A). Fulfillment of both these requirements was a condition precedent to bringing suit, as the Policy specifically states that "[n]o action shall be brought unless there has been compliance with the policy provisions."   Id. at p. 14.   Georgia case law is clear that such conditions precedent are permitted and binding against the insured.   Hill v. Safeco Ins. Co. of Am., 93 F. Supp. 2d 1375, 1383 (M.D. Ga. 1999); Townley v. Patterson, 139 Ga. App. 249 (1976).   "An insurer is entitled to require its insured to abide by the policy terms[.]"   Diamonds & Denims, Inc. v. First of Ga. Ins. Co., 203 Ga. App. 681, 683 (1992) (internal citations omitted).   "Failure to comply with policy provisions which are conditions precedent to bringing suit is a breach which precludes recovery as a matter of

13

law." <u>Roberts v. State Farm Fire and Cas. Co.</u>, Case No. 7:11-CV-86(HL), 2011 WL

6215700 (M.D. Ga., Dec. 14, 2011) (citing <u>Farmer v. Allstate Ins. Co.</u>, 396 F. Supp. 2d 1379,

1382 (N.D. Ga. 2005)).

<u>Failure to Provide Requested Documents and Records</u>

"When questions exist as to the cause of a fire for which a claim is made, the

insurer has the right to investigate before reaching a decision as to whether to pay the

claim."   <u>Farmer v. Allstate Ins. Co.</u>, 396 F. Supp. 2d 1379, 1381 (N.D. Ga. 2005).   State

Farm clearly informed Plaintiff that it needed the requested records and documents

"because there are questions regarding this fire loss[.]"   (Doc. 24, #7, Exh. B-4).

Plaintiff's proffered evidence and arguments that Plaintiff did not cause the fire are

irrelevant.   State Farm had the right to *investigate* the cause of the fire in order to make a

determination of Plaintiff's claim, and Plaintiff was "required to cooperate with the

insurer in investigation and resolution of the claim."   <u>Diamonds & Denims</u>, 203 Ga.

App. at 683.

Georgia law requires "an insured to provide any 'material information' to the

insurer that the insurer is entitled to receive under the insurance policy, and, absent an

excusable failure to do so, [such failure] constitutes a breach of the insurance contract."

<u>Hines v. State Farm Fire & Cas. Co.</u>, 815 F.2d 648, 651 (11th Cir. 1987) (citing <u>Halcome v.</u>

<u>Cincinnati Ins. Co.</u>, 254 Ga. 742, 744 (1985)).   Clearly the Policy entitles State Farm to

14

receive any "records and documents [it] request[s]." (Policy, p. 13, Doc. 13). Thus, the issue becomes whether the requested information State Farm claims Plaintiff failed to provide was "material" to Plaintiff's claim for coverage.   "Georgia courts take a broad view of materiality," <u>Meyers v. State Farm</u>, 801 F. Supp. 709 (N.D. Ga. 1992), and "[u]nder Georgia law, materiality is generally a mixed question of law and fact[.]"   <u>So. Realty Mgt., Inc. v. Aspen Specialty Ins. Co.</u>, Case No. 1:08-CV-0572, 2009 WL 1174661 at *4 (N.D. Ga. Apr. 28, 2009) (citing <u>Woods v. Indep. Fire Ins. Co.</u>, 749 F.2d 1493, 1496 (11th Cir. 1985)).

  Here, genuine factual disputes exist that preclude this Court from granting State Farm judgment as a matter of law on this issue.   Plaintiff maintains that he provided State Farm with all of the information that it requested.   Specifically, Plaintiff states that he provided copies of his bank statements and tax returns for the three years preceding the fire, and he provided copies of his home mortgage and truck loan.   Plaintiff states that he also provided State Farm with the proof of loss statement which included the personal property inventory.   In addition, Plaintiff explains that any "material" documents he failed to provide were destroyed in the fire.

  Where "an insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by the jury."   <u>Diamonds & Denims, Inc.</u>, 203 Ga. App. at 683.   In this case, Plaintiff both cooperated to some degree

and provided an explanation for any non-compliance.[4]   State Farm points out that Plaintiff only submitted the documents a mere three days prior to the expiration of the suit limitation period.   Plaintiff, however, states that he provided some documentation before this time.   Moreover, this Court cannot find as a matter of law that Plaintiff failed to cooperate because he submitted the requested documents only three days prior to the expiration of the suit limitation.   Such facts would be for a jury to weigh.

State Farm argues that even though Plaintiff cooperated with State Farm's requests by providing some relevant documentation, State Farm is nevertheless is entitled to summary judgment under the authority of <u>Halcome</u>, 254 Ga. at 744; <u>Allstate Ins. Co. v. Hamler</u>, 247 Ga. App. 574 (2001); and <u>Farmer</u>, 396 F. Supp. 2d 1379.   The Court, however, disagrees.   Contrary to State Farm's arguments otherwise, this case is clearly distinguishable from <u>Halcome</u>, <u>Hamler</u>, and <u>Farmer</u>.   In each of those fire-loss cases, although the insureds provided a portion of the requested documents, they completely refused to provide the insurance companies with certain financial information or information relating to their income.   Those courts found that the requested financial information was material to the plaintiffs' insurance claims because it

---

[4] Plaintiff also appears to argue that his mental disabilities are a valid explanation for any non-compliance in failing to provide the requested documents.   However, for the reasons explained in the next section of this Order, the Court finds not only that the evidence regarding Plaintiff's mental disabilities is inadmissible, but, even if the evidence was admissible, no reasonable jury could find Plaintiff's mental illnesses excused any failure to provide material documents.

16

was relevant to the insurers' suspicions of fraud and to a financial motive.   None of the insureds provided an explanation for their refusal to provide the documents. Therefore, the courts held that even though the insureds provided certain other information, because they failed to provide material information relevant to the insurers' investigation of their claims, they breached the contract and summary judgment was appropriate for the insurance companies.

In the case currently at bar, Plaintiff did not *refuse* to provide the requested information; he in fact did provide some documentation to the State Farm, including information regarding his finances.   Plaintiff maintains he provided all of the information requested; State Farm maintains he did not provide all of the requested information.   The record does not contain copies of the information Plaintiff provided, so a clear question of fact exists.   Moreover, Plaintiff's delay in providing the requested information would be another fact for the jury to consider.   Thus, the Court cannot find as a matter of law that Plaintiff breached the insurance agreement for failure to provide material information.

Failure to Submit to Examination Under Oath

The Court does find, as a matter of law, that Plaintiff's failure to submit to the requested examination under oath constitutes a breach of the insurance contract.   The Policy requires the insured, "as often as [the insurer] reasonably require[s to] submit to . .

17

. examinations under oath."   (Policy, p. 13, Doc. 13, Exh. A).   This clause, coupled with

the Policy's standard provision forbidding insureds from bringing an action "unless

there has been compliance with the policy provisions," provides that submission to an

examination under oath by the insured is a condition precedent to recovery on the

Policy.   Brookins v. State Farm Fire & Cas. Co., 529 F. Supp. 386 (D.C. Ga. 1982)

(citations omitted).   This contractual provision is commonly used in insurance policies

and has long been upheld by many courts.   See, e.g., Halcome, supra; Nichols v. Pearl

Assur. Co., Ltd., 71 Ga. App. 378, 378 (1944) ("A requirement in a policy of fire insurance,

that the insured shall submit to an examination under oath . . . is binding and valid; and a

refusal to comply with this condition will preclude the insured from recovering upon the

policy, where it provides that no suit can be maintained until after compliance with such

conditions.").

    In at least seventeen letters, over an almost two year period of time, State Farm

clearly and specifically requested Plaintiff to submit to an examination under oath and

informed Plaintiff that it could not decide Plaintiff's claim without the examination.

Indeed, State Farm attempted to accommodate Plaintiff in any way possible and

scheduled the examination four separate times.   In scheduling each examination, State

Farm clearly designated the specific time and place.   Compare Saft Am., Inc. v. Ins. Co.,

155 Ga. App. 500 (1980), and Brookins, 529 F. Supp. at 386 (although plaintiffs failed to

18

submit to examinations in violation of the insurance contracts, courts found no breach of policies because insurers failed to designate time and place for examinations).   Plaintiff, however, failed to attend each time.

Plaintiff's claim that he did not receive notice of the scheduled October 2009 examination is disingenuous, as the evidence shows Plaintiff called State Farm that afternoon and told State Farm he "was aware of a meeting scheduled but that he would not be attending as [he] needed to find an attorney." (Doc. 24, #14, Exh. B-11). Moreover, Plaintiff would not provide an updated address.   Plaintiff's claim that he does not remember making this phone call does not refute the fact that he was aware of the meeting and therefore received notice of the scheduled examination.   Plaintiff waited until *two days* before the expiration of the two-year suit limitation period to request that the examination under oath be rescheduled.   Contrary to Plaintiff's insinuations otherwise, the Court finds under these facts no reasonable jury could find Plaintiff made a good faith effort to submit to the required examination.   Thus, in failing to submit to the examination under oath, Plaintiff failed to satisfy a condition precedent before filing suit.

Plaintiff's failure "to submit to the requested examination under oath constitutes a breach of the insurance contract unless some privilege excuses plaintiff's failure to comply with the contractual condition."   Pervis v. State Farm Fire & Cas. Co., 901 F.2d

944, 946 (11th Cir. 1990) (citing <u>Halcome</u>, 254 Ga. at 744; and <u>Hines v. State Farm Fire & Cas. Co.,</u> 815 F.2d 648, 651 (11th Cir. 1987)).   In stating that Plaintiff has been diagnosed with schizo-affective disorder and that he is bi-polar, manic depressive, and paranoid, Plaintiff appears to claim that these mental disabilities excuse him from complying with the provisions of the insurance contract.[5]   Indeed, the "failure to comply with a condition precedent to coverage on an insurance policy may be excusable if the insured is dead, missing[,] or physically or mentally disabled."   <u>Blackburn v. State Farm Fire & Cas. Co.,</u> 174 Ga. App. 157, 158 (1985) (citations omitted).

Although this Court is aware that "[t]he question of the sufficiency of the excuse offered is generally a question of fact to be determined by the jury," the Court finds that Plaintiff's proffered excuse -- that his mental disabilities excuse his failure to comply -- is insufficient as a matter of law for several reasons.   <u>Id.</u> (internal quotation and citation omitted).

First, as State Farm points out, Plaintiff presents no admissible evidence that he suffers from a diagnosed medical condition that would have prevented him from complying with the Policy for the nearly two years before he filed suit.   The statements

---

[5] Plaintiff also appears to contend that the recorded statement he gave to State Farm satisfies his obligation to submit to an examination under oath.   However, the contract expressly requires "examinations under oath" which are not recorded statements.   Thus, the Court rejects this argument.   <u>See</u> <u>Pervis</u>, 901 F.2d at 946, fn 3 (rejecting insurer's argument that recorded statements satisfy the examination under oath requirement).

regarding Plaintiff's illnesses contained in the affidavits of Plaintiff, his mother, and his father are merely conclusory, self-serving statements that possess no probative value. See Evers v. Gen. Motor Corp., 770 F.2d 984, 986 (11th Cir. 1985) (court found affidavit had no probative value where it failed to provide specific facts to support its conclusory allegations) (citations omitted).

Moreover, the medical records purporting to establish Plaintiff suffers from these mental disabilities are clearly inadmissible.   Plaintiff attached the records to his Affidavit; he did not attach the records to the affidavit of an affiant through whom the records could be admitted into evidence. In addition, Plaintiff has laid no foundation for the admission of these medical records, and the documents are neither certified nor properly authenticated. "In order for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence." Burnett v. Stagner Hotel Courts, Inc., 821 F. Supp. 678, 683 (N.D. Ga. 1993).   Plaintiff has met none of these requirements.   Thus, all of the evidence establishing that Plaintiff suffers from a mental disability is inadmissible and cannot be considered.

However, even if the Court was to consider the evidence that Plaintiff suffers from a mental disability, no reasonable jury could conclude those disabilities excused his

21

failure to comply with the examination under oath or any other condition of the Policy. Out of all of the medical records Plaintiff submitted, only those records relating to Plaintiff's one week hospital admission in August 2010 are even relevant to Plaintiff's claim.   At most these records would explain Plaintiff's noncompliance for the time period around August 2010, but they would not explain his noncompliance for the nearly year and half before August 2010 or the two months after.   Indeed, no evidence exists from which a reasonable jury could find Plaintiff, for nearly two years, continuously suffered from any illness which prevented him from cooperating with State Farm's requests.   On the contrary, the facts that Plaintiff provided State Farm with at least some (or as Plaintiff claims, all) of the requested documents, that he indicated he would only give a recorded statement and not an examination under oath, and that he actually *gave* a recorded statement to State Farm, completely undermine any such claim. Moreover, Plaintiff himself initiated contact with State Farm on at least five separate occasions inquiring about the status of his claim.

Finally, the Court finds Plaintiff's medical excuse fails as a matter of law because Plaintiff did not notify State Farm that he suffered from any illness or disability or its possible side effects, thereby distinguishing this case from Blackburn v. State Farm Fire & Cas. Co., 174 Ga. App. 157 (1985).   In Blackburn, the Georgia Court of Appeals held that the insured's medical excuse for non-compliance in submitting to an examination

22

under oath was an issue of fact *because* the insured submitted medical evidence to the insurer establishing he was unable to submit to an examination before suit was filed. The insured in that case presented the insurer with a note from his physician who stated that the insured was unable to give testimony at that time because of the influence of the medication prescribed for his neuromuscular disorder, secondary to cerebrovascular disease.   The case currently at bar is clearly distinguishable.   Here, the record contains absolutely no evidence that Plaintiff even notified State Farm that he suffered from any medical illness, much less that Plaintiff presented any medical evidence to State Farm establishing he could not comply with the examination under oath.   Thus, Plaintiff's medical excuse for failing to comply with a condition precedent to filing suit fails as a matter of law, and State Farm is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant State Farm's Motion for Summary Judgment [Doc. 13] is **GRANTED**.

**SO ORDERED** this 29th day of March, 2012.


S/   C. Ashley Royal
**C. ASHLEY ROYAL**
**UNITED STATES DISTRICT JUDGE**

SSH/aes

23